HARRY BETZ *et al., Appellants,* v. TOWER SAVINGS BANK
*et al., Respondents.*[1]

[1]Reported in 55 P. (2d) 338.

*Mark M. Litchman,* for appellants.

*Lyons & Orton, Harry H. Johnston, John E. Belcher,* and *Henderson, Carnahan & Thompson,* for respondents.

BEALS, J.—In their amended complaint in this action, plaintiffs alleged the corporate existence of the two defendants first named in the caption of the action, and that the third defendant, John Bjorklund, was the regularly elected sheriff of Pierce county. Plaintiffs then alleged that, during the month of May, 1930, they were the owners of a tract of land in Tacoma, upon a portion of which stood the ''Betz Building;'' that the land was reasonably worth $125,000, and that defendant Tower Savings Bank (hereinafter referred to as the bank) loaned plaintiffs $42,000, accepting as security therefor a mortgage upon the land upon which the building stood; that thereafter plaintiffs by payments reduced the amount of the mortgage by some $2,000, but later failed to pay some installments of principal which fell due and some interest, whereupon the bank brought suit against plaintiffs seeking judgment upon plaintiffs' note, secured by the mortgage, together with foreclosure of the latter instrument; that during the month of March, 1934, judgment was rendered against plaintiffs and in favor of the bank for over $50,000, and the property was ordered sold in satisfaction of the judgment; that the then sheriff of Pierce county sold the property to the bank for $43,000, leaving a deficiency judgment against

plaintiffs in the sum of $7,500. In this connection, plaintiffs alleged:

"IV. . . . That at the time of the sale, to-wit, April 21, 1934, there were no bidders or purchasers present to bid for the property; that in violation of Section 585, Remington's Revised Statutes of the State of Washington, Sheriff Campbell in collusion with the defendant bank, made a farcical sale of the property to the bank, which was worth at least $100,000, for $43,000, leaving a deficiency judgment against the plaintiffs in favor of the bank for the sum of $7500.00; that said statute provides that in the event that at the time of a sale there are no purchasers, or other sufficient cause, or where it should not be to the advantage of all concerned (and which reasons were known to both the bank and the then sheriff, to be more fully stated in the next paragraph) the sheriff shall postpone said sale. The sheriff, however, did not postpone said sale; on the contrary, he made the alleged sale and in his return to the court, he fraudulently stated that the bank was the highest and best bidder of all the bidders, when he knew that there were no bidders. Moreover, both he and the defendant bank knew that the sale was not for the advantage of all concerned as required by the statute, but only for the advantage of the defendant bank, which obtained the property worth $100,000 for $43,000, and a deficiency judgment for $7500.00, which later was used to appropriate other property of the plaintiffs in the sum of $150,000, and there is still a deficiency of $750.00, all of which facts will be more fully set forth in the second cause of action.

"V. That in addition to the reasons furnished by the statute, namely, Section 585, the sale should have been postponed for equitable reasons as well as on the ground of public policy. At the time of the sale, the property was intact and had depreciated very little since 1930, and although market conditions were bad, a matter of common knowledge to everyone, the Betz Building and land had a reproduction value of at least $100,000; that the defendant bank and the then sheriff had common knowledge of the facts; that

money was scarce, and that unless the Federal government loaned money to the banks and other owners of property, such as homes and farms, and both Federal and state governments restricted depositors of banks from withdrawing their deposits, the people would lose their all; that the defendant bank was one of those assisted by the government; that the Federal government, although it assisted many, did not, until recently, offer to assist these plaintiffs, and now that it has, the assistance will be futile by reason of the fact that the time for redemption will shortly expire, unless the order of sale and/or the return are held void by the court on equitable grounds, and allows these plaintiffs to borrow money from the government to redeem their property; that the new public policy as expressed by the federal government, namely, loaning money to property owners to avoid confiscation of property by private parties, and as expressed by the legislature of the state of Washington, which at its last session passed a law requiring the court to establish a minimum or upset price in foreclosure proceedings so as to give equitable compensation to the mortgagors, should urge this court to apply equitable principles. Equity sprang up out of the harsh application of the common law, and the statutory law when it deprived people of their property. The plaintiffs respectfully state that the economic conditions of which the court must take judicial notice, cry for equity against the taking of property without adequate compensation.

"VI. The sale was void because made in violation of Section 585; because of the false return made by the sheriff which was a fraud perpetrated on the court; because sold when there were no bidders; because of the gross inadequacy of price. The time for redemption expires shortly. The present sheriff, John Bjorklund, should be restrained from issuing a deed to the property to the bank or to any person or persons the bank may have assigned the judgment or its interest.

"VII. As an additional reason for equity to interfere on the side of these plaintiffs, the plaintiffs believe and state it as a fact that shortly after the

farcical sale was made to the bank, the bank entered into an agreement with the Tacoma Drug Company and third parties, whose names these plaintiffs do not know, to sell the said property for about $80,000, the exact amount the plaintiffs do not know; that these third parties may claim some interest in the said property, but which interests are inferior to that of the plaintiffs, and are based upon the invalid sale."

For a second cause of action, plaintiffs re-alleged the paragraphs of their first cause of action, and in addition pleaded:

"II. That the Betz Building, even if the sale was valid, was worth more than the judgment, and the defendant bank was not entitled to a deficiency judgment in any sum. In equity and good conscience the deficiency judgment should be set aside.

"III. The defendant bank, having obtained fraudulently and illegally, a deficiency judgment in the sum of $7500.00, as aforesaid on November 10, 1934, proceeded in the same cause, namely 72430, to sell other property of the plaintiffs, to satisfy the iniquitous judgment. The property levied upon is adjacent to the Betz Building in the same section of Tacoma, with the same business advantages; in fact it consists of the balance of the block, and is reasonably worth $150,000, exclusive of legitimate incumbrances. The property is legally described as:

" 'All of Blocks 1502 and 1503, map of New Tacoma, Washington Territory, with the vacated portion of Jefferson Street, in the City of Tacoma.'

On said November 10, 1934, the then Sheriff Campbell, Jr., proceeded to hold a mock public auction at which so-called auction there were no bidders or purchasers. Worse still, he sold nearly a whole city block for $7000.00, leaving still a deficiency judgment of $750.00, in favor of the bank against these plaintiffs. Former Sheriff Campbell and the bank knew at the time of this mock sale that the offer of a $7000.00 reduction in the deficiency judgment was nothing less than wholesale robbery of nearly a city block, and in violation of at least one provision in Section 585, which

requires a sale to be made to the advantage of all concerned; that the facts set forth in the first cause of action should have compelled the then sheriff to postpone the sale; that thereafter, Sheriff Campbell, Jr., made a false and fraudulent return to the court, in which he said that the $7000.00 offer was the best bid of all bidders, when he knew that there were no bidders.

"That no attempt was made by Sheriff Campbell and the defendant bank, as required by Section 587 of Remington's Revised Statutes, to sell the lots separately. The two blocks contained a number of lots and buildings, and in violation of the law he sold the entire block with all of the buildings thereon for $7000.00.

"IV. That the said property, like the Betz Building, was sold under conditions which were grossly inequitable, and any fair appraisal based on reproduction costs should convince the court that the sale of the property should be set aside.

"V. That the deficiency remaining, namely, $750.00, after the sale of all the property belonging to the plaintiffs, is likewise grossly inequitable in that the bank has robbed the plaintiffs of enough property.

"VI. That the defendant Sheriff Bjorklund, will, unless restrained by this court, issue a deed to the bank for said property at the expiration of the redemption period.

"WHEREFORE, plaintiffs petition the court, first, for an order vacating the sale of the Betz Building on April 21, 1934, and with it all proceedings thereafter, and that Sheriff Bjorklund be restrained from issuing a deed to the Betz Building to any of the defendants or to any other person, and that the interests of the defendants be declared to be void and of no value; second, that if the sale be held to be valid, that the plaintiffs receive the difference between the reproduction value of the Betz Building and the amount of the judgment; third, that the deficiency judgment of $7500.00 be declared void or satisfied by the sale of the Betz Building, and that the sale of blocks 1502 and 1503 on November 10, 1934, be vacated and held

for naught; and fourth, for such other and further relief which modern equity should decree is just, fair and reasonable, and that plaintiffs have judgment and all their costs and disbursements incurred."

Defendants answered the complaint, and the action was regularly set for trial. It appears from the statement of facts that, when the action was called for trial, defendants moved to dismiss the same, arguing that no cause of action was pleaded, and that the court had no jurisdiction. Plaintiffs were allowed to file an amended complaint (being the pleading above referred to), defendants insisting upon their motion as against the amended pleading. After argument, the court granted defendants' motion and entered judgment dismissing the action, from which judgment plaintiffs have appealed.

Appellants argue that their action is one to set aside two orders of sale pursuant to which their property was sold for $50,000, when in fact it was worth many times that amount.

Rem. Rev. Stat., § 585 [P. C. § 7895], referred to by appellants in their complaint, reads as follows:

"If, at the time appointed for the sale, the sheriff should be prevented from attending at the place appointed, or, being present, should deem it for the advantage of all concerned to postpone the sale for want of purchasers, or other sufficient cause, he may postpone the sale not exceeding one week next after the day appointed, and so from time to time, for the like cause, giving notice of every adjournment by public proclamation made at the same time, and by posting written notices of such adjournment under the notices of sale originally posted by him. The sheriff, for like causes, may also adjourn the sale from time to time, not exceeding thirty days beyond the day at which the writ is made returnable, with the consent of the plaintiff indorsed upon the writ."

In their complaint, appellants make no specific reference to any orders of sale, and, if material, it may be assumed that the decree of foreclosure directed the sale of the mortgaged property. It is a fair inference from the complaint that the decree was entered in accordance with Rem. Rev. Stat., § 1119 [P. C. § 8204], which provides for the entry of deficiency judgments in actions based upon an express agreement for the payment of a sum of money. Appellants do not allege that the decree in the foreclosure action was entered without due process of law, or that the court exceeded its jurisdiction. They characterize the judgment as "iniquitous," but they do not suggest any particular in which the decree fails to conform to general or statutory law. The complaint is silent as to whether or not the sales of which appellants complain were confirmed by the court. It may be inferred from the complaint that orders of confirmation were entered, as it is alleged that "the time for redemption expires shortly." Appellants do not argue that the decree should be vacated or modified in any respect.

Rem. Rev. Stat., title 3, chapter 17, § 464 [P. C. § 8130], *et seq.,* grants to the superior court power to vacate or modify its judgments or orders, § 467 [P. C. § 8133] providing that an application for such relief shall set forth the judgment or order and the facts constituting a defense to the action, together with allegations showing petitioner to be entitled to relief. Appellants have not followed this procedure, which this court has held to be exclusive within the purview of the statute above referred to. *Chezum v. Claypool,* 22 Wash. 498, 61 Pac. 157, 79 Am. St. 955; *Peyton v. Peyton,* 28 Wash. 278, 68 Pac. 757; *State ex rel. Post v. Superior Court,* 31 Wash. 53, 71 Pac. 740.

■ Appellants do not allege that any greater price for the property could be procured on a resale thereof, nor do they make or allege any tender or offer to pay the judgment or to redeem from either sale. It is a well-recognized rule of pleading that the use of the word *fraud* or a similar expression does not enlarge the scope of the facts directly alleged. *Evert v. Tower,* 51 Wash. 514, 99 Pac. 580, 21 L. R. A. (N. S.) 950. The rule is well stated in 27 C. J., pp. 30-1, § 147, as follows:

"A characterization of acts as fraudulent which are not fraudulent per se is not sufficient. It must be made to appear by the facts alleged, independent of mere conclusions, that if the allegations are true a fraud has been committed."

■ Under our statute, a judicial sale must be expressly confirmed by order of court. We have held that such an order of confirmation (Rem. Rev. Stat., § 591 [P. C. § 7908]) is a step in the statutory procedure leading up to the issuance of a sheriff's deed, and that the same is conclusive as to certain matters. *Terry v. Furth,* 40 Wash. 493, 82 Pac. 882; *Goshert v. Wirth,* 130 Wash. 14, 226 Pac. 124; *Gunstone v. Robbins,* 158 Wash. 80, 290 Pac. 844. Appellants were entitled to be heard upon any applications made for orders confirming the sales of which appellants complain, and could have brought any order which the court entered before this court for review, if they felt that the facts and the law warranted such action. *Davis Estate, Inc. v. Rochelle,* 181 Wash. 81, 42 P. (2d) 788.

According to the allegations in their complaint, appellants, if they were entitled to any relief, should have sought the same in the foreclosure action, in which action they could have objected to the confirmation of the sales of which they complain, or presented

to the court any other questions which, in their opinion, entitled them to relief.

Upon the question of disparity of value between the amount bid and the actual worth of the property, this court has sustained sales in which the difference was even greater than that alleged here. *Merritt v. Graves,* 52 Wash. 57, 100 Pac. 164; *Johnson v. Johnson,* 66 Wash. 113, 119 Pac. 22; *Grunden v. German,* 110 Wash. 237, 188 Pac. 491; *Atwood v. McGrath,* 137 Wash. 400, 242 Pac. 648.

It is evidently the intent of the statute that objections to a sale on execution be presented to the court when application for the confirmation of the sale is heard. That, of course, is the logical time for presentation of objections to such confirmation. Appellants in their complaint criticize the sale because there was no competitive bidding, but they call attention to no authority which supports the proposition that a sheriff should not accept a bid made by the only prospective purchaser who may present himself at the time and place the property is cried for sale.

Appellants also strongly criticize the sheriff for accepting the bid, alleging that the amount offered was much less than the property was worth. It cannot be assumed, however, that the sheriff is advised as to the actual value of real property which he is selling. He simply carries out the mandate of the court contained in the general or special execution which the clerk has delivered to him. It is not his duty to examine the property. He may or may not have seen the property, but it cannot be expected that he has formed any opinion as to the value thereof or ascertained what, if any, liens may exist thereon which would be superior to the judgment pursuant to which he is acting. The question of the adequacy of the price bid should be presented to the court at or before

the time an order confirming the sale is asked for. Under the statute, such an order cannot be requested immediately after the sale, a time being allowed for the express purpose of filing objections.

Appellants again complain of the sheriff because in his return he referred to the bank's bid as the best bid, when, in fact, it was the only offer made. They also contend that, under § 585, *supra,* he should have adjourned the sale when only one bidder appeared. It is not alleged that the sheriff was requested to postpone the sale, and it cannot be held, under appellants' allegations, that appellants may now in a separate proceeding successfully attack sales to which objections might be urged prior to confirmation. Whether or not the only bid received should, as a matter of grammar, be referred to as the best bid, is immaterial in connection with the question here to be determined. The pertinent question was the reasonableness of the bid, upon which matter appellants had a right to be heard when the question of confirmation or non-confirmation of the sale was presented to the court. The matter of the postponement of the sale was for the sheriff to determine, and the complaint contains no allegations in reference to that phase of the matter which entitle appellants to relief in this action. All these matters should have been urged on objection to confirmation.

In the case of *Goshert v. Wirth,* 130 Wash. 14, 226 Pac. 124, the effect of an order confirming a sale was discussed, and it was held that an order confirming a sale concludes inquiry into any irregularity attending it, save as to jurisdictional matters.

Matters pertinent to questions of value were fully discussed by this court in the case of *Mellen v. Edwards,* 179 Wash. 272, 37 P. (2d) 203.

In the case of *Brady v. Ford,* 184 Wash. 467, 52

P. (2d) 319, a judgment of the superior court dismissing an action to quiet title upon sustaining a plea of *res judicata* based upon an order confirming a sale of real estate was affirmed by this court. In the course of the opinion, this court said:

"An order of confirmation is a final order, and therefore appealable. *Krutz v. Batts,* 18 Wash. 460, 51 Pac. 1054. It is a conclusive determination of the regularity of the sale as to all persons of whom the court has jurisdiction, in any other action, suit or proceeding whatever. Where there are no such errors as will oust the court of jurisdiction, the order of confirmation concludes inquiry into any irregularity attending it. *Parker v. Dacres,* 1 Wash. 190, 24 Pac. 192; *Terry v. Furth,* 40 Wash. 493, 82 Pac. 882; *Goshert v. Wirth,* 130 Wash. 14, 226 Pac. 124. In *Otis Bros. & Co. v. Nash,* 26 Wash. 39, 66 Pac. 111, this court said:

" 'Having regard to the stability of real estate titles, an order confirming a sheriff's sale must be held to be more than a mere formal order. It is the solemn declaration of the court that the sale has been regularly and legally made, and those who would be in position to avoid the consequences of such order must pursue the method outlined by statute by making objections in time, so that the entry of the order may be prevented, or, if entered, may be reviewed by the appellate court if desired.' "

Appellants argue that they are entitled to relief under paragraph VII of their first cause of action, above quoted. In this paragraph, they allege that after the sheriff's sale the bank entered into an agreement with the Tacoma Drug Company and other parties "to sell the said property for about $80,000, the exact amount the plaintiffs do not know." At the time it is alleged such an agreement was made, the bank did not own the property, but merely held a certificate of purchase therefor, subject to redemption. Of course, the owner of a certificate of pur-

chase may sell the same to anyone who desires to purchase it. It cannot be held that a mere allegation in an independent action in equity to the effect that the holder of a certificate of purchase has agreed to sell the property covered thereby for a sum in excess of the amount bid at the sale, entitles the record owner of the property to relief. It is scarcely conceivable that anyone would agree to pay, to the owner of a certificate of purchase, $80,000 for a piece of property which could be redeemed by the record owner for a much smaller amount. Appellants do not allege that the property has been sold; they merely state that they "believe" that the bank has agreed to sell it. These allegations are too vague and indefinite to entitle appellants to relief in the case at bar.

Appellants argue that the United States government, through some of its agencies, is extending relief to the owners of business property, but they do not even allege that they would be able to procure, through any such agency, sufficient or any funds which would or might enable them to redeem their property.

Appellants cite cases in which courts have refused to confirm sales or have set sales aside. Many more such authorities might be cited, and courts have often properly awarded such relief. The cases, however, are not in point here, appellants making no allegation to the effect that they objected to the confirmation of the sales, and alleging no facts which might excuse the timely making of such protests. It does not appear that appellants sought to have their action considered either as objections to the confirmation of the sales, if they had not been confirmed, or as an attack on the orders of confirmation, if such had been entered. Appellants do not argue that their complaint should be considered as an attack upon the decree of foreclosure, and, indeed, they state no grounds of attack against

that decree. Neither does the complaint comply with the statutory requirements concerning a petition to vacate or modify a judgment.

We fail to find in appellants' amended complaint any allegations which entitle them to relief, and the trial court properly entered judgment dismissing the action. The judgment appealed from is accordingly affirmed.

TOLMAN, BLAKE, MAIN, and HOLCOMB, JJ., concur.

